**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |
|---|---|
| **EARL HARPER, MARILYN THAMERT, and SCHERETTA MICHELLE WHITE, individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ETHOS GROUP, INC.,**<br><br>**Defendant.** | Case No.  3:23-cv-00184<br><br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiffs Earl Harper, Marilyn Thamert, and Scheretta Michelle White ("Plaintiffs") bring this Class Action Complaint against Ethos Group, Inc., ("Ethos" or "Defendant"), individually and on behalf of all others similarly situated ("Class Members"), and allege, upon personal knowledge as to their own actions and their counsel's investigations, and upon information and belief as to all other matters, as follows:

1.      Defendant Ethos Group, Inc., is a large third-party consulting group that partners with retail automotive dealers to assist in the sale to and retention of customers by assisting the dealership in after sale consultations, promotions, and servicing.

2.      As part of Defendant's business, Ethos acquires, stores, processes, analyzes, and otherwise utilizes for its business purposes personally identifiable information ("PII" or "Private Information"), including first and last names, contact information, driver's license numbers, and Social Security numbers.

3.     Plaintiffs and Class Members are individuals whose Private Information was acquired, stored, and utilized by Defendant for its business and financial benefit.

4.     By obtaining, collecting, utilizing, and deriving a benefit from Plaintiffs' and Class Members' Private Information, Defendant owed and otherwise assumed statutory, regulatory, contractual, and common law duties and obligations to keep Plaintiffs' and Class Members' Private Information confidential, safe, secure, and protected from unauthorized access, disclosure, and theft in data breaches.

5.     Defendant, however, disregarded its duties, obligations, and the privacy rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, and/or negligently failing to take and implement adequate and reasonable data security measures to protect and safeguard the Private Information of Plaintiffs and Class Members. To the contrary, Defendant allowed the Private Information of Plaintiffs and Class Members to be stored and maintained in a vulnerable, unencrypted state.

6.     As a result of Defendant's failure to implement and maintain reasonable data security measures, from July 30, 2022 to July 31, 2022, an external actor was able to hack and gain unauthorized access to Defendant's network. The unauthorized actor was able to access, exfiltrate, and steal the Private Information of Plaintiffs and Class Members (the "Data Breach").[1] But for Defendant's acts and omissions, the Data Breach would not have happened, and Plaintiffs and Class Members would not have been injured as described herein.

---

[1] https://apps.web.maine.gov/online/aeviewer/ME/40/c1af9d00-86a4-4dab-ae18-faeff7ec9058/99d9048b-4234-4385-8334-0938e25bfe60/document.html (last visited January 17, 2023).

7.    Defendant admits on notice letters sent to Plaintiffs and Class Members (the "Notice")[2] that an outside party "accessed" and acquired consumer information including Private Information which includes at least full names and driver's license numbers or non-driver identification card numbers of approximately 822,000 individuals.[3]

8.    The exposed Private Information of Plaintiffs and Class Members is highly sensitive and can be utilized to commit identity theft and fraud. The Private Information has been or likely will be sold on the dark web, as this is the modus operandi for cyber criminals targeting this type of Private Information. Plaintiffs and Class Members, therefore, are now at a current and ongoing risk of identity theft.

9.    While many details of the Data Breach remain in the exclusive control of Defendant, upon information and belief, Defendant breached its duties and obligations by failing, in one or more of the following ways: (1) failing to design, implement and maintain reasonable network safeguards against foreseeable threats; (2) failing to monitor and log file access and network ingress and egress; (3) failing to design, implement, and maintain reasonable data retention policies; (4) failing to adequately train employees on data security; (5) failing to comply with industry-standard data security practices; (6) failing to warn Plaintiffs and Class Members of Defendant's inadequate data security practices; (7) failing to encrypt or adequately encrypt the Private Information; (8) failing to recognize or detect that an unauthorized actor had accessed its network in a timely manner to mitigate the harm; (9) failing to utilize widely available software

---

[2] https://ago.vermont.gov/blog/2022/10/31/ethos-group-data-breach-notice-to-consumers/?utm_source=rss&utm_medium=rss&utm_campaign=ethos-group-data-breach-notice-to-consumers (last visited January 2, 2023).
[3] https://apps.web.maine.gov/online/aeviewer/ME/40/c1af9d00-86a4-4dab-ae18-faeff7ec9058/99d9048b-4234-4385-8334-0938e25bfe60/document.html (last visited January 19, 2023).

able to detect and prevent ransomware; and (10) otherwise failing to secure Defendant's network using reasonable and effective data security procedures free of foreseeable vulnerabilities.

10.    Moreover, despite learning of the Data Breach on August 1, 2022, Defendant did not begin notifying Plaintiffs and Class Members until approximately October 24, 2022, nearly two months later.[4]

11.    Upon information and belief, prior to the Breach, Defendant was aware of its security failures but failed to correct them or to disclose them to the public, including Plaintiffs and Class Members.

12.    Upon information and belief, Defendant failed to disclose its security failures to its customers and the public at large with the intention of deceiving Plaintiff and Class Members.

13.    The implementation of proper encryption, logging, detection, training, and monitoring protocols requires affirmative acts. Accordingly, Defendant knew or should have known that it did not take such actions and failed to implement adequate data security practices.

14.    If Plaintiffs and Class Members had known of Defendant's security failures, Plaintiffs and Class Members would not have entrusted their PII to Defendant.

15.    If Defendant's customers had known of Defendant's security failures, Defendant's customers would not have entrusted Plaintiffs' and Class Members' PII to Defendant.

16.    As a result of Defendant's acts and omissions, Plaintiffs and Class Members had their most sensitive Private Information stolen by malicious cybercriminals. The information that was compromised is a one-stop shop for identity thieves to wreak havoc on Plaintiffs' and Class Members' personal and financial lives. Given the sensitivity and static nature of the information

---

[4] https://ago.vermont.gov/blog/2022/10/31/ethos-group-data-breach-notice-to-consumers/?utm_source=rss&utm_medium=rss&utm_campaign=ethos-group-data-breach-notice-to-consumers (last visited January 2, 2023).

involved (such as full names and driver's license numbers or non-driver identification card numbers), the risk of identity theft is present, materialized, and will continue into the foreseeable future for Plaintiffs and Class Members.

17.     As a direct result of the Data Breach, Plaintiffs and Class Members have suffered the following actual and imminent injuries: (i) invasion of privacy; (ii) out-of-pocket expenses; (iii) loss-of time and productivity incurred mitigating the present risk and imminent threat of identity theft; (iv) actual identity theft and fraud resulting in additional economic and non-economic damages; (v) diminution of value of their PII; (vi) anxiety, stress, nuisance, and annoyance; (vii) the present and continuing risk of identity theft posed by their Private Information being placed in the hands of the ill-intentioned hackers and/or criminals; (ix) the retention of the reasonable value of the Private Information entrusted to Defendant; and (x) the present and continued risk to Private Information, which remains on Defendant's vulnerable network, placing Plaintiffs and Class Members at an ongoing risk of harm.

18.     Plaintiffs bring this class action to remedy these harms, on behalf of themselves and all similarly situated persons whose Private Information was compromised in the Data Breach. Plaintiffs seek compensatory damages, incidental damages, and consequential damages for the diminution in value of their PII, invasion of their privacy, loss of their time, loss of their productivity, out-of-pocket costs, and future costs of necessary identity theft monitoring. Plaintiffs also seek injunctive relief including improvements to Defendant's data security system and protocols, deletion of Private Information that is unnecessary for legitimate business purposes, and future annual audits to protect their Private Information against foreseeable future cyber security incidents.

19.    Plaintiffs bring this Class Action Complaint against Defendant asserting claims for: (1) negligence, (2) breach of implied contract, (3) unjust enrichment, and (4) declaratory judgment/injunctive relief.

## PARTIES

20.    Plaintiff Earl Harper is a resident and citizen of the State of Florida. Plaintiff Harper is a victim of the Data Breach having received a Notice of Data Security Incident letter from Ethos in November of 2022, by U.S. Mail.

21.    Plaintiff Marilyn Thamert is a resident and citizen of the State of Oregon. Plaintiff Thamert is a victim of the Data Breach having received a Notice of Data Security Incident letter from Ethos, dated November 2, 2022, by U.S. Mail.

22.    Plaintiff Scheretta Michelle White is a resident and citizen of the State of Georgia. Plaintiff White is a victim of the Data Breach having received a Notice of Data Security Incident letter from Ethos, dated November 2, 2022, by U.S. Mail.

23.    Defendant Ethos Group., is a corporation with its principal place of business located at 370 West Colinas Boulevard, Irving, Texas 75039.

## JURISDICTION AND VENUE

24.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 members in the proposed class; and at least one member of the class, including some Plaintiffs, are citizens of a state different from Defendant.

25.     This Court has personal jurisdiction over Defendant because its principal place of business is in this District and the acts and omissions giving rise to Plaintiffs' claims occurred in and emanated from this District.

26.     Venue is proper under 18 U.S.C § 1391(b)(1) because Defendant's principal place of business is in this District.

## FACTUAL ALLEGATIONS

27.     Defendant Ethos boasts that its dedicated representatives provide the highest level of service and are actively engaged in the development of all aspects of the dealer's potential. Ethos goes on to boast that their clients receive unique consulting services from representatives who excelled in their retail dealership positions. Ethos states that their mission "of increasing dealer revenues while lowering their overhead and reducing their risk of doing business require our representatives to maintain the lowest account loads in the industry."[5]

28.     Upon information and belief, Defendant is a large company with approximately $300 million in annual revenues, 344 employees, and business dealings with dealerships in all 50 states of the United States.[6]

### *Ethos Collects Private Information*

29.     Defendant collects the Private Information of its clients' customers as a condition of providing services. This Private Information is used by Defendant in the ordinary course of its business for, *inter alia*, consultation and partnering with the dealerships to develop a tailored program for every aspect of sales, finance, and service. At the time of the Data Breach, Defendant provided services to several different clients in the automobile sales industry.[7]

---

[5] https://www.ethosgroup.com/services/consulting (last visited Jan. 17, 2023).
[6] https://www.datanyze.com/companies/ethos-group/42028539 (last visited Jan. 11, 2023).
[7] https://www.ethosgroup.com/privacy-policy/ (last visited Jan. 17, 2023)

30.    The types of private information collected and utilized by Defendant includes, at least, contact information, financial information, driver's license numbers, and Social Security numbers,

### Defendant's Privacy Policy & Promises

31.    On its customer-facing website, Defendant posts a Privacy Policy, last updated January 29, 2020 (the "Privacy Policy").[8] The Privacy Policy states that, "Ethos Group does not use or disclose sensitive personal information… without your explicit consent."

32.    Upon information and belief, Defendant represented in its agreements, advertisements, and sales communications with its customers (and the public at large) that Defendant had proper cybersecurity controls and would protect the data the Defendant received from its customers, including Plaintiffs' and Class Member's Private Information.

### The Data Breach

33.    According to Ethos, on August 1, 2022, it became aware of a third party accessing consumer information between July 30 and July 31, 2022. Upon investigation, Ethos determined that an external actor gained unauthorized access to its systems.[9]

34.    According to Ethos, its subsequent investigation confirmed that the accessed information included Private Information."[10]

35.    The investigation further revealed that the following Private Information was involved in the unauthorized access: full names and driver's license numbers or non-driver identification card numbers.

---

[8] *Id.*
[9]    https://apps.web.maine.gov/online/aeviewer/ME/40/c1af9d00-86a4-4dab-ae18-faeff7ec9058/99d9048b-4234-4385-8334-0938e25bfe60/document.html (last visited Jan. 17, 2023).
[10] *Id.*

36.    On October 24, 2022, nearly two months after Ethos first discovered the Data Breach, Ethos finally notified Plaintiffs and Class Members via a Notice of Data Breach Letter. In the Notice of Data Breach Letter, Ethos instructed Plaintiffs and Class Members to "remain vigilant against incidents of identity theft by reviewing your account statements and monitoring your free credit reports for suspicious activity and to detect errors."[11]

### *The Data Breach was Foreseeable and Preventable*

37.    As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[12]

38.    Defendant has not publicly shared details of the Data Breach. However, based on Defendant's limited statements, it is clear Defendant did not take reasonable precautions that would have allowed it to quickly detect, prevent, stop, undo, or remediate the effects of the Data Breach. These failures allowed cybercriminals using well publicized attack practices to access and steal the Private Information Defendant maintained on Plaintiffs and Class Members.

39.    Defendant could have prevented the Data Breach by encrypting the systems and files containing the Private Information of Plaintiffs and Class Members and by destroying Private Information it no longer had a legitimate need for.

40.    Additionally, to prevent and detect unauthorized cyber-attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures known to be generally effective at mitigating the risk of a cyberattack:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

---

[11] *Id.*
[12] *See* How to Protect Your Networks from RANSOMWARE, at 3, available at https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited Jan. 17, 2023).

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[13]

41. To prevent and detect cyber-attacks, including the cyber-attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks. . . .

- **Use caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (*e.g.*, ".com" instead of ".net"). . . .

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it. . . .

- **Verify email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA

---

[13] *See* How to Protect Your Networks from RANSOMWARE, at 3, available at https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited Jan. 17, 2023).

product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic. . . .[14]

42.     To prevent and detect cyber-attacks, including the cyber-attack that resulted in the

Data Breach, Defendant could and should have implemented, as recommended by the Microsoft

Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events

**Harden infrastructure**

---

[14] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at* https://us-cert.cisa.gov/ncas/tips/ST19-001 (last visited Jan. 17, 2023).

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[15]

43.     Given that Defendant was storing the Private Information of Plaintiffs and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

44.     The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the unauthorized exposure and exfiltration of the Private Information of Plaintiffs and Class Members.

45.     Defendant's negligence in safeguarding the Private Information of Plaintiffs and Class Members is exacerbated by the repeated warnings and alerts directed to companies like Defendant to protect and secure sensitive data they possess.

46.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiffs and Class Members from being compromised.

**Value of Private Information**

47.      The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[16] The FTC describes "identifying information" as "any name or number that may be used, alone or

---

[15] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited Jan. 17, 2023).
[16] 17 C.F.R. § 248.201 (2013).

in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[17]

48.    The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[18] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[19] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[20]

49.    One such example of criminals using PHI for profit is the development of "Fullz" packages. "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record or more on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz", which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes,

---

[17] *Id.*
[18] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Jan. 17, 2023).
[19] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at* https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited Jan. 17, 2023).
[20] *In the Dark*, VPNOverview, 2019, *available at* https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Jan. 17, 2023).

including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge.[21]

50.    Cybercriminals create Fullz by cross-referencing and marrying data stolen in a breach with data available elsewhere (including Social Security numbers and driver's license numbers), with an astonishingly complete scope and degree of accuracy.[22]

51.    The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiffs' and the proposed Class's phone numbers, email addresses, and Social Security numbers. In other words, even if certain information such as emails, phone numbers, Social Security numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over again. That is exactly what is happening to Plaintiffs and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs' and other members of the proposed Class's stolen PII is being misused in this way, and that such misuse is fairly traceable to the Data Breach.

---

[21] *See, e.g.*, Brian Krebs, *Medical Records For Sale in Underground Stolen From Texas Life Insurance Firm*, KREBS ON SECURITY, (Sep. 18, 2014), *available at* https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm/ (last visited January 3, 2023).

[22] *See, e.g.*, https://apps.web.maine.gov/online/aeviewer/ME/40/7ca66e2b-be43-44fc-b011-fa287a38bd84.shtml (last visited January 3, 2023) ("On January 12, 2022, Ethos learned that unauthorized actors had launched a sophisticated attack against the company's online insurance application flow (the "Online Flow"). To do this, the unauthorized actors entered information they already had obtained from other sources—first and last name, address, date of birth, and driver's license state—into the Online Flow. Then they used specialized web tools to access the corresponding driver's license numbers (produced via a third-party integration) from the page source code of the Online Flow. Importantly, this information did not appear on the public-facing part of the website. While Ethos uses software and other methods designed to detect attacks against the Online Flow and the company's systems more generally, the unauthorized actors used techniques that appear to have been designed to avoid detection.").

52.     Social Security numbers are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[23]

53.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

54.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[24]

55.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information,

---

[23] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at* https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Jan. 17, 2023).
[24] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at* http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited Jan. 17, 2023).

personally identifiable information and Social Security numbers are worth more than 10x on the black market."[25]

56.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing, or even give false information to police.

57.    The fraudulent activity resulting from the Data Breach may not come to light for years.

58.    Moreover, there may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[26]

59.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiffs and Class Members, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of a breach.

60.    The ramifications of Defendant's failure to keep secure the Private Information of Plaintiffs and Class Members are long lasting and severe. Once Private Information is stolen,

---

[25] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at* https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Jan. 17, 2023).
[26] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at* https://www.gao.gov/assets/gao-07-737.pdf (last visited Jan. 17, 2023).

fraudulent use of that information and damage to victims may continue for years. Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages, in addition to any fraudulent use of their Private Information.

61.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, and thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

62.     To date, Defendant has failed to offer Plaintiffs and Class Members any credit monitoring service. Defendant has failed to protect Plaintiffs and Class Members from the threats they face for years to come, particularly in light of the Private Information at issue here. To the contrary, Defendant put the burden squarely on Plaintiffs and Class Members to "remain vigilant against incidents of identity theft and fraud by reviewing your account statements and monitoring your free credit reports for suspicious activity and to detect errors."[27]

63.     The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiffs and Class Members.

64.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' Private Information from unauthorized disclosure.

65.     Plaintiffs and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

---

[27] https://apps.web.maine.gov/online/aeviewer/ME/40/c1af9d00-86a4-4dab-ae18-faeff7ec9058/99d9048b-4234-4385-8334-0938e25bfe60/document.html (last accessed January 16, 2023).

66.    Plaintiffs and the Class Members relied on Defendant to implement and follow adequate data security policies and protocols, to keep their Private Information confidential and securely maintained, to use such Private Information solely for proper business purposes, and to prevent the unauthorized disclosures of the Private Information.

### *Defendant Failed to Comply with FTC Guidelines*

67.    Defendant was prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

68.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[28]

69.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.[29] The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer

---

[28] FEDERAL TRADE COMMISSION, *Start With Security: A Guide for Business*, *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited Jan. 17, 2023).
[29] FEDERAL TRADE COMMISSION, *Protecting Personal Information: A Guide for Business*, *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Jan. 17, 2023).

networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

70.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[30]

71.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

72.     Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

73.     Defendant was at all times fully aware of its obligation to protect the PII stored within its systems. Defendant was also aware of the significant repercussions that would result from its failure to do so.

---

[30] FTC, *Start With Security*, *supra*.

*Plaintiff Harper's Experience*

74.     Upon information and belief, prior to the Data Breach, Defendant obtained Plaintiff Harper's name, contact information, driver license number, and Social Security number.

75.     Plaintiff Harper provided his Private Information directly to one of Defendant's clients and indirectly to Defendant with the expectation that his Private Information would remain confidential.

76.     Plaintiff Harper trusted that his Private Information would be safeguarded according to internal policies and state and federal law.

77.     Upon information and belief, Plaintiff Harper's Private Information was stored on Defendant's network during the Data Breach and presently remains in Defendant's possession.

78.     In November of 2022, Defendant notified Plaintiff Harper that Defendant's network had been accessed by an unauthorized actor and that Plaintiff Harper's Private Information may have been involved in the Data Breach.

79.     Plaintiff Harper is very careful about sharing his sensitive Private Information. Plaintiff Harper has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff Harper stores any documents containing his Private Information in a safe and secure location or destroys the documents.

80.     Plaintiff Harper had never been a victim of a data breach prior to Defendant's Breach.

81.     As a result of the Data Breach, Plaintiff Harper has spent time dealing with the consequences of the Data Breach, which include time spent verifying the legitimacy of the Notice of Data Breach Letter, and self-monitoring his accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

82.     Plaintiff Harper suffered actual injury in the form of damages to and diminution in the value of his Private Information—a form of intangible property that Plaintiff Harper entrusted to Defendant—which was compromised in and as a result of the Data Breach.

83.     Shortly after and as a result of the Data Breach, Plaintiff Harper suffered actual injury in the form identity theft. Specifically, Plaintiff  Plaintiff Harper suffered actual injury in the form of two $250 fraudulent charges on his credit card. Plaintiff Harper became aware of these fraudulent charges when his bank alerted him of the fraudulent charges, cancelled his credit card, and ultimately sent him a new card.

84.     Additionally, since and as a result of the Data Breach, Plaintiff Harper has noticed numerous emails from reputable financial institutions informing him that accounts had been opened in his name, accounts which Plaintiff Harper, in fact, never opened.

85.     Plaintiff Harper suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

86.     Plaintiff Harper has spent several hours responding to the Data Breach and will continue to spend valuable time he otherwise would have spent on other activities, including but not limited to work and/or recreation.

87.     Plaintiff Harper has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of unauthorized third parties and possibly criminals.

88.     Plaintiff Harper has a continuing interest in ensuring that his Private Information—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from future breaches.

*Plaintiff Thamert's Experience*

89.    Upon information and belief, prior to the Data Breach, Defendant obtained Plaintiff Thamert's name, contact information, driver license number, and Social Security number.

90.    Plaintiff Thamert provided her Private Information directly to one of Defendant's clients and indirectly to Defendant with the expectation that her Private Information would remain confidential.

91.    Plaintiff Thamert trusted that her Private Information would be safeguarded according to internal policies and state and federal law.

92.    Upon information and belief, Plaintiff Thamert's Private Information was stored on Defendant's network during the Data Breach and presently remains in Defendant's possession.

93.    On approximately November 2, 2022, Defendant notified Plaintiff Thamert that Defendant's network had been accessed by an unauthorized actor and that Plaintiff Thamert's Private Information may have been involved in the Data Breach.

94.    Plaintiff Thamert is very careful about sharing her sensitive Private Information. Plaintiff Thamert has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff Thamert stores any documents containing her Private Information in a safe and secure location or destroys the documents.

95.    Plaintiff Thamert had never been a victim of a data breach prior to Defendant's Breach.

96.    As a result of the Data Breach, Plaintiff Thamert has spent time dealing with the consequences of the Data Breach, which include time spent verifying the legitimacy of the Notice of Data Breach Letter, and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

97.     Plaintiff Thamert suffered actual injury in the form of damages to and diminution in the value of her Private Information—a form of intangible property that Plaintiff Thamert entrusted to Defendant—which was compromised in and as a result of the Data Breach.

98.     Shortly after and as a result of the Data Breach, Plaintiff Thamert experienced an increase in spam and suspicious phone calls, texts, and emails.

99.     Plaintiff Thamert suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

100.     Plaintiff Thamert has spent approximately three hours responding to the Data Breach and will continue to spend valuable time she otherwise would have spent on other activities, including but not limited to work and/or recreation.

101.     Plaintiff Thamert has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties and possibly criminals.

102.     Plaintiff Thamert has a continuing interest in ensuring that her Private Information—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from future breaches.

***Plaintiff White's Experience***

103.     Upon information and belief, prior to the Data Breach, Defendant obtained Plaintiff White's name, contact information, driver license number, and Social Security number.

104.     Plaintiff White provided her Private Information directly to one of Defendant's clients and indirectly to Defendant with the expectation that her Private Information would remain confidential.

105.    Plaintiff White trusted that her Private Information would be safeguarded according to internal policies and state and federal law.

106.    Upon information and belief, Plaintiff White's Private Information was stored on Defendant's network during the Data Breach and presently remains in Defendant's possession.

107.    On approximately November 10, 2022, Defendant notified Plaintiff White that Defendant's network had been accessed by an unauthorized actor and that Plaintiff White's Private Information may have been involved in the Data Breach.

108.    Plaintiff White is very careful about sharing her sensitive Private Information. Plaintiff White has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff White stores any documents containing her Private Information in a safe and secure location or destroys the documents.

109.    As a result of the Data Breach, Plaintiff White has spent time dealing with the consequences of the Data Breach, which include time spent verifying the legitimacy of the Notice of Data Breach Letter, and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

110.    Plaintiff White suffered actual injury in the form of damages to and diminution in the value of her Private Information—a form of intangible property that Plaintiff White entrusted to Defendant—which was compromised in and as a result of the Data Breach.

111.    Shortly after and as a result of the Data Breach, Plaintiff White suffered actual injury in the form of identity theft. Plaintiff White became aware of this identity theft when she received letters from a reputable automobile manufacturer that someone had applied for financing in her name, financing which Plaintiff White never sought.

112.    Plaintiff White suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

113.    Plaintiff White has spent more than 10 hours responding to the Data Breach and will continue to spend valuable time she otherwise would have spent on other activities, including but not limited to work and/or recreation.

114.    Plaintiff White has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties and possibly criminals.

115.    Plaintiff White has a continuing interest in ensuring that her Private Information—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from future breaches.

## <u>CLASS ALLEGATIONS</u>

116.    Plaintiffs bring this nationwide class action on behalf of themselves and on behalf of others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

117.    The Nationwide Class that Plaintiffs seeks to represent is defined as follows:

> **All United States residents whose Private Information was compromised during the Data Breach that is the subject of the Notice of Data Breach Letter that Defendant sent to Plaintiffs and other Class Members on or around October 24, 2022.**

118.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards,

sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

119.    Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

120.    Numerosity, Fed R. Civ. P. 23(a)(1): Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are hundreds of thousands, if not millions, of individuals whose Private Information may have been improperly accessed in the Data Breach, and each Class is apparently identifiable within Defendant's records.

121.    Commonality, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

a.    Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiffs and Class Members;

b.    Whether Defendant had duties not to disclose the Private Information of Plaintiffs and Class Members to unauthorized third parties;

c.    Whether Defendant had duties not to use the Private Information of Plaintiffs and Class Members for non-business purposes;

d.    Whether Defendant failed to adequately safeguard the Private Information of Plaintiffs and Class Members;

e.    Whether and when Defendant actually learned of the Data Breach;

f.    Whether Defendant adequately, promptly, and accurately informed Plaintiffs and Class Members that their Private Information had been compromised;

g.  Whether Defendant violated the law by failing to promptly notify Plaintiffs and Class Members that their Private Information had been compromised;

h.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.  Whether Defendant adequately addressed and fixed the vulnerabilities that permitted the Data Breach to occur;

j.  Whether Plaintiffs and Class Members are entitled to actual, incidental, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

k.  Whether Plaintiffs and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

l.  Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

122.  <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of those of other Class Members because all had their Private Information compromised as a result of the Data Breach due to Defendant's misfeasance.

123.  <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members

uniformly, and Plaintiffs' challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to an individual Plaintiff.

124.     Adequacy, Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the Members of the Class, and the infringement of the rights and the damages Plaintiffs have suffered are typical of other Class Members. Plaintiffs have also retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

125.     Superiority and Manageability, Fed. R. Civ. P. 23(b)(3): Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

126.     The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm

the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

127.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

128.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

129.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Private Information of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

130.    Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

131.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would

advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.  Whether Defendant owed a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

b.  Whether Defendant breached a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

c.  Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d.  Whether an implied contract existed between Defendant on the one hand, and Plaintiffs and Class Members on the other, and the terms of that implied contract;

e.  Whether Defendant breached the implied contract;

f.  Whether Defendant adequately and accurately informed Plaintiffs and Class Members that their Private Information had been compromised;

g.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; and

h.  Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiffs and the Nationwide Class)

132.    Plaintiffs reallege paragraphs 1 through 131 above as if fully set forth herein.

133.    Plaintiffs and the Class entrusted Defendant with their Private Information.

134.    Plaintiffs and the Class entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their Private Information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

135.    Defendant has full knowledge and had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiffs and the Class could and would suffer if the Private Information was wrongfully disclosed.

136.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiffs and the Class involved an unreasonable risk of harm to Plaintiffs and the Class, even if the harm occurred through the criminal acts of a third party.

137.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the Private Information of Plaintiffs and the Class in Defendant's possession was adequately secured and protected.

138.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain pursuant to regulations.

139.    Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the Private Information of Plaintiffs and the Class.

140.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiffs and the Class. That special relationship arose because Plaintiffs and the Class entrusted Defendant with their confidential Private Information, a necessary part of obtaining services from Defendant. That duty further arose because Defendant chose to collect and maintain the Private Information for its own pecuniary benefit.

141.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiffs or the Class.

142.    A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

143.    Plaintiffs and the Class's injuries were the foreseeable and probable result of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiffs and the Class, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems.

144.    Defendant's own conduct created a foreseeable risk of harm to Plaintiffs and the Class. Defendant's misconduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included their decisions not to comply with industry standards for the safekeeping of the Private Information of Plaintiffs and the Class, including basic encryption techniques freely available to Defendant.

145.    Plaintiffs and the Class had no ability to protect their Private Information that was within, and on information and belief remains within, Defendant's possession.

146.    Defendant was in a position to protect against the harm suffered by Plaintiffs and the Class as a result of the Data Breach.

147.    Defendant had (and continues to have) a duty to adequately disclose that the Private Information of Plaintiffs and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

148.    Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the Private Information of Plaintiffs sand the Class.

149.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiffs and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the Private Information of Plaintiffs and the Class during the time the Private Information was within Defendant's possession or control.

150.    Defendant improperly and inadequately safeguarded the Private Information of Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

151.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the Private Information of Plaintiffs and the Class in the face of increased risk of theft.

152.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of Private Information.

153.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiffs and the Nationwide Class, the Private Information of Plaintiffs and the Class would not have been compromised.

154.    There is a close causal connection between Defendant's failure to implement adequate data security measures to protect the Private Information of Plaintiffs and the Class and the harm, or risk of imminent harm, suffered by Plaintiffs and the Nationwide Class. The Private Information of Plaintiffs and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

155.    As a direct and proximate result of Defendant's negligence, Plaintiffs and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to decide how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to

undertake appropriate and adequate measures to protect the Private Information of Plaintiffs and the Class; and (viii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and the Class.

156.    As a direct and proximate result of Defendant's negligence, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

157.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiffs and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant continues to fail to undertake appropriate and adequate data security measures to protect the Private Information in its continued possession.

158.    As a direct and proximate result of Defendant's negligence, Plaintiffs and the Class are entitled to recover actual, consequential, and nominal damages.

## COUNT II
## NEGLIGENCE *PER SE*
### (On Behalf of Plaintiffs and the Nationwide Class)

159.    Plaintiffs reallege paragraphs 1 through 131 above as if fully set forth herein.

160.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC

publications and orders described above also form part of the basis of Defendant's duty in this regard.

161.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and by not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Class.

162.    Defendant's violation of Section 5 of the FTC Act is, in and of itself, evidence of Defendant's negligent data security practices.

163.    Plaintiffs and the Class are within the class of persons that the FTC Act was intended to protect.

164.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

165.    Section 521.052 of the Texas Identity Theft Enforcement and Protection Act states that, "A business shall implement and maintain reasonable procedures, including taking any appropriate corrective action, to protect from unlawful use or disclosure any sensitive personal information collected or maintained by the business in the regular course of business." Tex. Bus. & Com. Code Ann. § 521.052(a).

166.    Defendant violated Section 521.052 of the Texas Identity Theft Enforcement and Protection Act by failing to use reasonable measures to protect Private Information and by not complying with applicable industry standards, as described in detail herein.

167.    Section 521.053 of the Texas Identity Theft Enforcement and Protection Act states that, "A person who conducts business in this state and owns or licenses computerized data that includes sensitive personal information shall disclose any breach of system security, after discovering or receiving notification of the breach, to any individual whose sensitive personal information was, or is reasonably believed to have been, acquired by an unauthorized person. The disclosure shall be made without unreasonable delay…." Tex. Bus. & Com. Code Ann. § 521.053(b).

168.    Defendant violated Section 521.053 of the Texas Identity Theft Enforcement and Protection Act by failing to notify affected individual of the Data Breach without unreasonable delay.

169.    Defendant's violation of the Texas Identity Theft Enforcement and Protection Act is, in and of itself, evidence of Defendant's negligent data security practices.

170.    Plaintiffs and the Class are within the class of persons that the Texas Identity Theft Enforcement and Protection Act was intended to protect.

171.    The harm that occurred as a result of the Data Breach is the type of harm the Texas Identity Theft Enforcement and Protection Act was intended to guard against.

## COUNT III
## BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiffs and the Nationwide Class)

172.    Plaintiffs reallege paragraphs 1 through 131 above as if fully set forth herein.

173.    Defendant required Plaintiffs and the Class to provide and entrust their Private Information to Defendant, including, without limitation, first and last name, contact information, driver's license numbers, and Social Security numbers.

174.    Defendant solicited and invited Plaintiffs and the Class to provide their Private Information to Defendant, either directly or indirectly through Defendant's clients, as part of Defendant's regular business practices. Plaintiffs and the Class accepted Defendant's offers and provided their Private Information to Defendant.

175.    As a condition of obtaining care and/or services from Defendant's clients, Plaintiffs and the Class provided and entrusted Defendant with their Private Information. In so doing, Plaintiffs and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and the Class if their data had been breached and compromised or stolen.

176.    A meeting of the minds occurred when Plaintiffs and the Class agreed to, and did, provide their Private Information to Defendant and/or Defendant's clients with the reasonable understanding that their Private Information would be adequately protected from foreseeable threats. This inherent understanding exists independent of any other law or contractual obligation any time that highly sensitive PII exchanged as a condition of receiving services. It is common sense that but for this implicit and/or explicit agreement, Plaintiffs and Class Members would not have provided their Private Information.

177.    Defendant separately has contractual obligations arising from and/or supported by the consumer facing statements in its Privacy Policies.

178.    Plaintiffs and the Class fully performed their obligations under the implied contracts with Defendant.

179.    Defendant breached the implied contracts it made with Plaintiffs and the Class by failing to safeguard and protect their Private Information and by failing to provide timely and accurate notice that Private Information was compromised as a result of the Data Breach.

180.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs and the Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

181.    As a result of Defendant's breach of implied contract, Plaintiffs and the Class are entitled to and demand actual, consequential, and nominal damages.

## COUNT IV
## UNJUST ENRICHMENT
### (On behalf of Plaintiffs and the Nationwide Class)

182.    Plaintiffs reallege paragraphs 1 through 131 above as if fully set forth herein.

183.     each and every allegation in the Complaint as if fully set forth herein.

184.    Plaintiffs and Class Members conferred a monetary benefit on Defendant by providing Defendant, directly or indirectly, with their valuable Private Information.

185.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Private Information.

186.     Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

187.     Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiffs and Class Members because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

188.     Defendant acquired the monetary benefit and Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

189.     If Plaintiffs and Class Members knew that Defendant had not secured their Private Information, they would not have agreed to provide their Private Information to Defendant.

190.     Plaintiffs and Class Members have no adequate remedy at law.

191.     As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in

Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in their continued possession and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

192.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

193.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that it unjustly received from them.

**COUNT V**
**DECLARATORY RELIEF**
**(On Behalf of Plaintiffs and the Nationwide Class)**

194.    Plaintiffs reallege paragraphs 1 through 131 above as if fully set forth herein.

195.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and granting further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal statutes described in this Complaint.

196.    An actual controversy has arisen in the wake of the Data Breach regarding Defendant's present and prospective common law and other duties to reasonably safeguard Plaintiffs' and Class Members' Private Information, as well as whether Defendant is currently maintaining data security measures adequate to protect Plaintiffs and Class Members from future data breaches that compromise their Private Information. Plaintiffs and the Nationwide Class remain at imminent risk that further compromises of their Private Information will occur in the future.

197.    The Court should also issue prospective injunctive relief requiring Defendant to employ adequate security practices consistent with law and industry standards to protect employee and patient Private Information.

198.    Defendant still possesses the Private Information of Plaintiffs and the Class.

199.    To Plaintiffs' knowledge, Defendant has made no announcement that it has changed its data storage or security practices relating to the Private Information.

200.    To Plaintiffs' knowledge, Defendant has made no announcement or notification that it has remedied the vulnerabilities and negligent data security practices that led to the Data Breach.

201.    If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another data breach. The risk of another such breach is real, immediate, and substantial.

202.    The hardship to Plaintiffs and Class Members if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if another data breach occurs at Ethos,  Plaintiffs and Class Members will likely continue to be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

203.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Ethos, thus eliminating the additional injuries that would result to Plaintiffs and Class Members.

204.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Defendant implement and maintain reasonable security measures, including but not limited to the following:

  a.  Engaging third-party security auditors/penetration testers, as well as internal security personnel, to conduct testing that includes simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

  b.  engaging third-party security auditors and internal personnel to run automated security monitoring;

  c.  auditing, testing, and training its security personnel regarding any new or modified procedures;

  d.  purging, deleting, and destroying Private Information not necessary for its provisions of services in a reasonably secure manner;

  e.  conducting regular database scans and security checks; and

  f.  routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

**COUNT VI**
**VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT**
**(On Behalf of Plaintiffs and the Nationwide Class)**

205.    Plaintiffs reallege paragraphs 1 through 131 above as if fully set forth herein.

206.    Defendant—by failing to (1) maintain proper data security and (2) disclose its lack of proper data security—has engaged in false, misleading, and deceptive acts or practices in the conduct of trade or commerce in violation of the Texas Deceptive Trade Practices-Consumer Protection Act (Tex. Bus. & Com. Code Ann. § 17.41, *et seq*.) (the "DTPA").

207.    Defendant—by failing to (1) maintain proper data security and (2) disclose its lack of proper data security—has engaged in false, misleading, and deceptive acts or practices in violation of the DTPA § 17.46(b), including but not limited to:

a.    "[R]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not," DTPA § 17.46(b)(5)); and

b.    "[F]ailing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed," DTPA § 17.46(b)(24).

208.    Defendant—by failing to (1) maintain proper data security and (2) disclose its lack of proper data security—committed an unconscionable act or practice.

209.    Defendant—by failing to (1) maintain proper data security and (2) disclose its lack of proper data security—caused the Data Breach and resulting damages to Plaintiffs and Class Members.

210.    Defendant knowingly and intentionally failed to maintain proper data security and disclose its lack of proper data security to the public, including Plaintiffs and Class Members.

211.    Plaintiffs and Class Members are consumers under the DTPA.

212.    Plaintiffs and Class Members reasonably relied on Defendant's false, misleading, and deceptive acts to Plaintiffs' and Class Members' detriment.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and Class Members, request judgment against Defendant and that the Court grant the following:

A.    For an Order certifying the Classes, and appointing Plaintiffs and their Counsel to represent the Classes;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Private Information of Plaintiffs and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiffs and Class Members;

C.    For injunctive relief requested by Plaintiffs, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members, including but not limited to an order:

  i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

  ii.    requiring Defendant to protect, including through encryption, all data collected through the course of their business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

  iii.    requiring Defendant to delete, destroy, and purge the Private Information of Plaintiffs and Class Members unless Defendant can provide to the Court

reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

iv.     requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiffs and Class Members;

v.      prohibiting Defendant from maintaining the Private Information of Plaintiffs and Class Members on a cloud-based database;

vi.     requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.   requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.     requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.      requiring Defendant to conduct regular database scanning and securing checks;

xi.     requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees'

respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and Class Members;

xii.   requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.   requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv.   requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.   requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.   requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years,

appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.      For an award of damages, including, but not limited to, actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

E.      For an award of attorneys' fees, costs, treble damages, and litigation expenses, as allowed by law;

F.      For prejudgment interest on all amounts awarded; and

G.      Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand that this matter be tried before a jury.


Date: January 24, 2023                    Respectfully Submitted,

                                          */s/ Bruce W. Steckler*
                                          Bruce W. Steckler
                                          **STECKLER, WAYNE, CHERRY &
                                          LOVE, PLLC**
                                          12720 Hillcrest, Suite 1045
                                          Dallas, Texas 75230
                                          Telephone: (972) 387-4040
                                          Facsimile: (972) 387-4041
                                          bruce@swclaw.com


                                          JEAN S. MARTIN*
                                          RA AMEN*
                                          **MORGAN & MORGAN COMPLEX
                                          LITIGATION GROUP**
                                          201 N. Franklin Street, 7th Floor

Tampa, Florida 33602
(813) 559-4908
jeanmartin@ForThePeople.com
ramen@ForThePeople.com

*Pro Hac Vice Application forthcoming*

*Counsel for Plaintiffs and Putative Class*